IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| J & J SPORTS PRODUCTIONS, INC., | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. 14-6891 |
| | : | |
| v. | : | |
| | : | |
| GONZALO CHAUCA, individually and | : | |
| d/b/a PASTA ALLA ROSA; and | : | |
| GL GROUP CORPORATION, an | : | |
| unknown business entity d/b/a | : | |
| PASTA ALLA ROSA, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Smith, J.                                                          November 25, 2015

The plaintiff, a closed-circuit distributor of sports and entertainment programming, has brought commercial piracy claims against the defendants after they allegedly unlawfully intercepted and displayed a pay-per-view boxing program at their restaurant.  The plaintiff now moves for summary judgment as it asserts that no genuine issues of material fact exist regarding the defendants' unlawful interception of the program.  The defendants have failed to respond to the motion.  After reviewing the applicable record, there are no genuine issues of material fact as to whether the defendants unlawfully intercepted the program.  Accordingly, the court will grant the plaintiff's motion for summary judgment and enter judgment in favor of the plaintiff and against the defendants.

## I.        ALLEGATIONS AND PROCEDURAL HISTORY

The plaintiff, J & J Sports Productions, Inc., commenced this action by filing a complaint against the defendants, Gonzalo Chauca ("Chauca"), individually and d/b/a Pasta Alla Rosa, and GL Group Corporation ("GL Group"), an unknown business entity d/b/a Pasta Alla Rosa, on

December 4, 2014.  Compl., Doc. No. 1.  In the complaint, the plaintiff alleges that it was granted exclusive nationwide commercial distribution rights to the *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program*, telecast nationwide via closed-circuit television on December 8, 2012 (the "Program").  *Id.* at ¶ 16.  The plaintiff's distribution rights encompassed all undercard events and the main event.  *Id.*  Pursuant to the contract granting the plaintiff its distribution rights, the plaintiff entered into sublicensing agreements with various commercial establishments to permit public exhibition of the Program.  *Id.* at ¶ 17.  Without the plaintiff's authorization, the defendants unlawfully intercepted and broadcasted the Program at their commercial establishment, Pasta Alla Rosa, in Allentown, Pennsylvania.  *Id.* at ¶ 19.  Based on these allegations, the plaintiff asserts causes of action against the defendants for (1) the unauthorized publication or use of communications in violation of the Communications Act of 1934, 47 U.S.C. § 605, (2) the unauthorized interception, reception, publication, divulgence, display, and/or exhibition of the Program in violation of the Cable Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, and (3) state-law conversion.

On April 15, 2015, the court entered an order directing the plaintiff to show cause why the court should not dismiss the action for lack of timely service of the summonses and complaint upon the defendants.  Doc. No. 4.  The next day, the plaintiff filed declarations of service showing that it effected service upon both defendants within the 120-day period set forth in Rule 4(m) of the Federal Rules of Civil Procedure.  Doc. Nos. 5, 6.  Based on these declarations, the court dissolved the order to show cause on April 20, 2015, and Chauca filed an answer to the complaint on April 27, 2015.  Doc. Nos. 7, 8.

On April 30, 2015, the plaintiff requested that the clerk of court enter default against GL Group for its failure to answer or otherwise respond to the summons and complaint.  Doc. No. 9. On that same date, the clerk of court entered default against GL Group.  Unnumbered Doc. No.

Between Doc. Nos. 9, 10.  GL Group filed a motion to set aside the entry of default on May 5, 2015.[1]  Doc. No. 11.  On May 12, 2015, after a telephone conference with counsel, the court set aside the default.[2]  Doc. No. 15.  The defendants filed their answer and affirmative defenses to the complaint on May 14, 2015.  Doc. No. 16.  On June 1, 2015, the plaintiff filed a motion to strike the affirmative defenses raised by the defendants in their answer under Rule 12(f) of the Federal Rules of Civil Procedure.  Doc. No. 21.  The court denied the motion to strike on June 3, 2015.  Doc. No. 22.

The plaintiff filed the instant motion for summary judgment on September 15, 2015.  Doc. No. 25.  The defendants have failed to file a response to the motion for summary judgment and, on October 2, 2015, counsel for the defendants petitioned the court to withdraw.  Doc. No. 26.  The court held a hearing and heard oral argument on defense counsel's motion to withdraw and the motion for summary judgment on October 30, 2015.[3]  Following the hearing, the court entered an order granting counsel's motion to withdraw.  Doc. No. 30.  The motion for summary judgment is now ripe for disposition.

## II.      DISCUSSION

### A.      Standard of Review – Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

---

[1] The defendant mistakenly labeled the document as a motion to vacate a default judgment; however, no such judgment had been entered.

[2] Although the court struck the default on May 12, 2015, the plaintiff filed a response in opposition to GL Group's motion to set aside on May 19, 2015.  Doc. No. 18.

[3] In the order scheduling the hearing and argument, the court ordered that Chauca be present for the proceedings. Although the defendants' counsel appeared for the hearing and argument, Chauca failed to appear in person.

entitled to judgment as a matter of law.'" *Wright v. Corning*, 679 F.3d 101, 103 (3d Cir. 2012) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 482 (3d Cir. 1995)). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Once the moving party has met this burden, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation omitted); *see* Fed. R. Civ. P. 56(c) (stating that "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [b]y showing that the materials cited do not establish the absence . . . of a genuine dispute"). Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment. *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there

exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial [ ]'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

### B.   Analysis

### 1.   Liability Under 47 U.S.C. § 605

Although the plaintiff seeks relief under either 47 U.S.C. § 605 or 47 U.S.C. § 553 in its complaint, it has moved for summary judgment on only the section 605 claim.[4]   *See* Brief in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Br.") at 4 (acknowledging having asserted additional causes of action, but explaining that "Plaintiff seeks judgment pursuant to 47 U.S.C. § 605" (footnote omitted)). Section 605 provides in relevant part as follows:

---

[4] Both statutes "prohibit the unauthorized interception and broadcast of communications." *J & J Sports Prods., Inc. v. Edrington*, No. CIV. A. 10-3789 (CCC), 2012 WL 525970, at *2 (D.N.J. Feb. 16, 2012). "The difference between the statutes is that § 605 'encompasses the interception of satellite transmission,' while § 553 applies 'once a satellite transmission reaches a cable system's wire distribution phase.'" *J & J Sports Prods., Inc. v. Gallegos*, No. CIV. A. 08-201 (WHW), 2008 WL 3193157, at *3 (D.N.J. Aug. 5, 2008) (quoting *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 207 (3d Cir. 2001)). District courts have concluded that the distinction between sections 553 and 605 means that "[a] plaintiff may seek summary judgment pursuant to only one of th[ose] statutes." *J & J Sports Prods., Inc. v. Cruz*, No. CIV. A. 14-2496, 2015 WL 2376290 (E.D. Pa. May 18, 2015) ("Cruz I").

No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. This section shall not apply to the receiving, divulging, publishing, or utilizing the contents of any radio communication which is transmitted by any station for the use of the general public, which relates to ships, aircraft, vehicles, or persons in distress, or which is transmitted by an amateur radio station operator or by a citizens band radio operator.

47 U.S.C. § 605(a).

To establish a violation of section 605(a), the plaintiff must prove that the defendants "(1) intercepted a broadcast; (2) were not authorized to intercept the broadcast; and (3) showed the broadcast to others." *Edrington*, 2012 WL 525970, at *2 (citations omitted). Section 605 does not contain a *mens rea* element. *DirecTV v. Crespin*, 224 F. App'x 741, 757 (10th Cir. 2007) (explaining that "§ 605(a) does not have an intent requirement"). This lack of an intent element has caused many courts to conclude that it operates as a strict liability statute. *See, e.g.*, *Cruz I*, at *2 (stating section 605 is a "strict liability offense"); *J & J Sports Prods., Inc. v. Greathouse*, No. CIV. A. 13-922-PHX-GMS, 2015 WL 717907, at *2 (D. Ariz. Feb. 19, 2015) ("Violation of section 605 is a strict liability offense."); *J & J Sports Prods., Inc. v. Gonzalez*, No. CIV. A. 12-6313, 2013 WL 6022225, at *3 (E.D. Pa. Nov. 14, 2013) ("While it is true that . . . [section] 605 [is] a strict liability offense . . . ."). Although intent is irrelevant to a defendant's liability under section 605, it is relevant to the issue of damages. *See, e.g.*, *Doherty v. Wireless Broadcasting Sys. of Sacramento, Inc.*, 151 F.3d 1229, 1131 (9th Cir. 1998) ("The remedial provisions in both

6

Sections 553 and 605 take into consideration the degree of the violator's culpability and provide for reduced damages in those instances where the violator was unaware of the violation.").   In this regard, section 605 allows for enhanced damages (in an amount not more than $100,000 for each violation) if the plaintiff proves that the interception of the broadcast was "willful[] and for purposes of direct or indirect commercial advantage or private financial gain."   47 U.S.C. § 605(e)(C)(ii).

Before addressing the evidence that the plaintiff contends is undisputed and supports judgment in its favor in this case, the court notes that the defendants (through counsel or on their own) have not filed any document in this case since filing their answer on May 14, 2015.  They did not file a response to the motion to withdraw or the motion for summary judgment, and Chauca did not personally appear for oral argument on the motion on October 30, 2015.[5] Nonetheless, these failures have not affected the court's review of the motion for summary judgment because the court cannot grant the motion simply because the defendants have failed to respond to it.  *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . **(3)** grant summary judgment  if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."); E.D. Pa. Civ. R. 7.1(c) (providing that "[i]n the absence of timely response, [a] motion may be granted as uncontested except as provided under Fed.R.Civ.P. 56.").   Therefore, the court will review the evidence proffered by the plaintiff to evaluate whether it supports summary judgment in its favor in this case.

---

[5] Defense counsel, prior to receiving leave to withdraw, did argue in opposition to the motion for summary judgment on the defendants' behalf.

In support of its motion, the plaintiff has submitted an affidavit and declaration from its investigator, Josh Boettner, a declaration from its counsel, Thomas P. Riley, Esquire, and an affidavit from its president, Joseph M. Gagliardi.  *See* Doc. Nos. 25-3, 25-4, and 25-5.  With the declaration of Attorney Riley, the plaintiff attaches copies of requests for admissions that it served on the separate defendants.  *See* Declaration of Thomas P. Riley ("Riley Decl."), at ¶ 4 & Exs. 1, 2.  The defendants never responded to the requests by answering them or filing objections.  *Id.* at ¶ 4.  As such, the court will deem the matters in the requests for admissions as admitted and "conclusively established."  *See* Fed. R. Civ. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."); Fed. R. Civ. P. 36(b) ("A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended.").

Through the above-referenced evidence, the plaintiff has established sufficient, undisputed facts supporting its request for summary judgment on its section 605(a) claim.  In this regard, the undisputed evidence shows that the plaintiff purchased and retained the "exclusive commercial exhibition (closed circuit) licensing rights" to the Program.  Pl.'s Aff. in Supp. of Mot. for Summ. J., Aff. of Joseph M. Gagliardi ("Gagliardi Aff."), at ¶¶ 3, 4, Doc. No. 25-5. The plaintiff broadcasted the Program via an encrypted satellite signal.  *Id.* at ¶¶ 9, 11.  Although the plaintiff sublicensed the rights to the Program to some of its commercial customers, it never sublicensed the Program to the defendants and they never paid a sublicensing fee.  *Id.* at ¶¶ 3, 7, 19.

Because of continued problems with signal piracy, the plaintiff "retained auditors and law enforcement personnel to detect and identify signal pirates" of the Program.  *Id.* at ¶¶ 5, 6.  The plaintiff provided those auditors with a confidential list of customers who had paid the required

license fee to broadcast the Program.  *Id.* at ¶ 6.  One of the plaintiff's investigators, Josh L. Boettner ("Boettner"), entered the defendants' restaurant, Pasta Alla Rosa, on December 8, 2012, at 10:00 p.m.  Decl. of Affiant, Josh L. Boettner ("Boettner Aff."), Doc. No. 25-3.  Boettner paid a $30.00 cover charge that went only to food since the defendants were not serving beer at the restaurant.  *Id.*  While inside of the restaurant, Boettner observed one of the Program's undercard fights, a fight between Miguel Vasquez and Mercito Gesta, which was in the seventh round.  *Id.*; *see also* Gagliardi Aff. at ¶¶ 3, 7 (indicating that the Miguel Vasquez and Mercito Gesta undercard fight was part of the Program).  The defendants used satellite services to receive the fight, and it was observed on all three televisions in the restaurant.  Boettner Aff.; Riley Decl. at Ex. 1, Pl.'s First Request for Admiss. to Def. Gonzalo Chauca, Individually and d/b/a Pasta Alla Rosa ("Chauca Admiss.") at ¶¶ 22, 23, 25, 26; Riley Decl. at Ex. 2, Pl.'s First Request for Admiss. to Def. GL Group Corp., an Unknown Business Entity d/b/a Pasta Alla Rosa ("GL Group Admiss.") at ¶¶ 22, 23, 25, 26.  Someone from the restaurant asked Boettner if he wanted to watch the fight.  Boettner Aff.  Boettner stayed to watch the conclusion of the undercard fight, which ended with Miguel Vasquez winning by a twelve-round decision.  *Id.*

Based on this evidence, the plaintiff has introduced uncontroverted evidence showing that (1) the defendants intercepted a broadcast of the Program, (2) the plaintiff did not authorize the defendants to intercept the broadcast of the Program, and (3) the defendants showed the broadcast of the Program to others.  With this evidence, the plaintiff has established its claim under section 605(a).

As for Chauca's individual liability,

[a]n individual may be liable if [the individual] "(1) has the right and ability to supervise the violative activity, although [the individual] need not actually be supervising, because [the individual] need not know of the violative activity, and (2) has a direct financial interest in the violation, i.e., financial benefits, even if

9

not proportional or precisely calculable, that directly flow from the violative activity."

*Cruz I*, at *4 (quoting *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 296 (E.D. Pa. 2014)) (emphasis omitted).[6]   The above-mentioned standard "does not require actual knowledge or supervision" to find individual liability.  *Id.* (citation omitted).

Here, the defendants admit that Chauca "is an officer of GL Group Corporation, which owns and operates the commercial establishment doing business as Pasta Alla Rosa" and he "is an individual specifically identified on the business license issued by the City of Allentown for Pasta Alla Rosa."  *See* Compl. at ¶¶ 7, 8; Answer at ¶¶ 7, 8, Doc. No. 16.  In addition, Chauca has admitted that (1) he ordered the Program, (2) he, or individuals acting on his behalf, advertised that the Program would be telecast at Pasta Alla Rosa, (3) patrons watched the Program at Pasta Alla Rosa on December 8, 2012, (4) Pasta Alla Rosa "required its patrons to pay a cover charge (or some other type of entrance fee) to enter the restaurant during the broadcast of the Program, (5) he is an owner, manager, and officer of the entity owning Pasta Alla Rosa, and (6) he was inside Pasta Alla Rosa on the night of the broadcasting of the Program. Chauca Admiss. at ¶¶ 7-12, 19, 20, 30-33, 35.  Based on this evidence, there are no disputed issues of fact as to whether Chauca had the right and ability to supervise the activities at Pasta Alla Rosa, which included the unlawful interception of the Program, and that he had a direct financial interest in the conduct that violated section 605.[7]   Accordingly, Chauca is vicariously liable for the acts of GL Group and Pasta Alla Rosa.

---

[6] In *Cruz I*, the court recognized that *Yakubets* addressed a claim for individual liability under 47 U.S.C. § 553, but nonetheless applied the enunciated standard to the plaintiff's claim under section 605.  2015 WL 2376290, at *4.

[7] In the answer to the complaint, the defendants denied that Chauca had the right or ability to supervise the activities of Pasta Alla Rosa on December 8, 2012, because he neither owned nor operated the establishment.  *See* Answer at ¶ 9.  Nonetheless, the defendants have failed to go beyond the pleadings in responding to this allegation and are bound by the admissions resulting from their failure to properly and timely respond to the requests for admissions.

## 2.    Damages

Under section 605, an aggrieved party may elect to recover actual or statutory damages.

*See* 47 U.S.C. § 605(e)(3)(C)(i).  In this regard, section 605(e)(3)(C)(i) provides in pertinent part

as follows:

> **(C)(i)** Damages awarded by any court under this section shall be computed, at the election of the aggrieved party, in accordance with either of the following subclauses;
>
> **(I)** the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages;
>
> . . .
>
> **(II)** the party aggrieved may recover an award of statutory damages for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just, and for each violation of paragraph (4) of this subsection involved in the action an aggrieved party may recover statutory damages in a sum not less than $10,000, or more than $100,000, as the court considers just.

*Id.*  Here, the plaintiff is seeking statutory damages under section 605(e)(3)(C)(i)(II) because it

contends that "it would be impossible to calculate the full extent of the profits lost by [it] and the

additional damages sustained by [it]."  Pl.'s Br. at 8.

In addition to statutory damages under section 605(e)(3)(C)(i)(II), the plaintiff seeks an

award of enhanced damages.  *Id.* at 9.  Section 605 provides the court with discretion to

"increase the award of damages, whether actual or statutory, by an amount of not more than

$100,000 for each violation [of section 605(a)]" if "the court finds that the violation was

committed willfully and for purposes of direct or indirect commercial advantage or private

financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  A violation is "willful" if the defendant intends to

violate the statute or has "'knowledge of or reckless disregard for the illegality of the conduct.'"

*J & J Sports Prods., Inc. v. Cruz*, No. CIV. A. 14-2496, 2015 WL 2376051, at *6 (E.D. Pa. May

18, 2015) ("*Cruz II*") (quoting *Yakubets*, 3 F. Supp. 3d at 282-83).   Mere negligence is insufficient.  *Id.* (citing *Yakubets*, 3 F. Supp. 3d at 282-83).

As the plaintiff notes in its brief, the Third Circuit has not provided a formula for the calculation of statutory or enhanced damages under section 605.  Pl.'s Br. at 10.  The plaintiff requests that the court award $6,600 in statutory damages and $26,000 in enhanced statutory damages.  *Id.* at 9.  The plaintiff requests these awards because they would "satisfy the dual purposes of compensating Plaintiff and act[] as a deterrent against future acts of privacy by both these Defendants and others."  *Id.* at 10.

Concerning the amount of statutory damages, the court does not find the plaintiff's arguments for an award of $6,600 to be persuasive.  In this regard, the plaintiff asserts that the award of $6,600 is appropriate in this case in large part on considerations of deterrence.  *Id.* at 9-14.  Recently, the Honorable Juan R. Sanchez addressed this precise argument from the plaintiff and stated as follows:

> J & J asserts that the primary goal of piracy awards is deterrence, both specific and general, and argues that the Court should consider deterrence in calculating the statutory damages for this case. In a recent opinion regarding damages under § 553, the district court in *Joe Hand Promotions, Inc. v. Yakubets,* following the reasoning of the First Circuit in *Charter Commc'ns Entm't I, DST v. Burdulis,* 460 F.3d 168 (1st Cir. 2006) and the District of Massachusetts in *Comcast of Mass. I, Inc. v. Naranjo,* 303 F.Supp.2d 43, 49 (D. Mass. 2004), found that (1) statutory damages should be based on an estimation of actual damages, and (2) "§ 553's overall structure favors weighing deterrence under the enhanced damages provision and not under the statutory damages provision." *Yakubets,* 3 F.Supp.3d at 275 ("While deterrence is a universal issue addressed by § 553 ... deterrence as a factor is better considered under the enhanced damages rubric, which requires a showing of willfulness, than the statutory damages provision, which imposes strict liability." (citation omitted)). Section 605 parallels § 553 in language and structure, and, similar to § 553, nothing in the actual or statutory damages subsections of § 605 suggest that deterrence is an appropriate decisional factor. Instead, the statute suggests statutory damages are merely an alternative to actual damages. *Accord id.* (citing *Charter Commc'ns Entm't I, DST v. Burdulis,* 460 F.3d 168, 181 (1st Cir. 2006)).

12

In addition, the statutory damages for § 605 do not require intentional or willful misconduct, and can be awarded for mere negligence, contradicting J & J's deterrence rationale. Willful violations lead to criminal penalties, *see* 47 U.S.C. § 605(e)(2), and enhanced damages, *see id.* § 605(e)(3)(C)(ii), but actual and statutory damages are awarded without any showing of mens rea or even if the conduct is merely negligent, *accord Yakubets,* 3 F.Supp.3d at 276 (citing cases). Further, the statutory damages are capped at $10,000 for each violation. As a consequence, if deterrence was a factor in statutory damages and a party suffered actual damages greater than $10,000, the party would not be able to receive any deterrence premiums, even though violators causing the largest amounts of harm are those most deserving of the additional deterrence premium. *See id.* at 276 (citing *Comcast of Mass. I, Inc. v. Naranjo,* 303 F.Supp.2d 43, 49 (D. Mass. 2004)).

In sum, it appears Congress did not intend that a deterrence factor be part of the calculation for statutory damages. Following the reasoning of *Yakubets, Burdulis,* and *Naranjo* the Court finds that, according to the plain language of the statute, statutory damages are merely an alternative to actual damages. The Court should not double count deterrence by considering it first in an actual or statutory damages award and then again into an enhanced damages award. Therefore, the Court will calculate statutory damages based on a calculation of actual damages without considering deterrence.

*Cruz II,* at *4.

This court agrees with Judge Sanchez that deterrence is not a proper consideration for calculating statutory damages under section 605. Instead, the court will consult other factors in estimating the amount of statutory damages. *See id.* at *5 ("The statutory damages provision authorizes courts to use their discretion to fashion factors to estimate, rather than compute actual damages."). In this regard,

the Court should consider first what the defendant would have paid had he obtained a lawful license. Next, according to the actual damages statute, the court may consider "any profits of the violator that are attributable to the violation which are not taken into account in computing the actual damages." 47 U.S.C. § 605(e)(3)(C)(i)(I). Evidence of profits may be too speculative to award if the plaintiff cannot show that the profits are "attributable to the violation," and it is in the court's discretion how much additional damages a plaintiff should receive. *See Yakubets,* 3 F.Supp.3d at 280 (citation omitted). Here, in estimating profits, the Court will consider

"(1) the size of the establishment; (2) the number of patrons at the establishment, taken, to the extent possible, as the number of

13

> patrons present because of the interception (to which evidence of
> advertising to attract customers may be relevant); (3) the number,
> size, and position of screens displaying the broadcast (a factor to
> be considered in conjunction with (1) and (2) as an indication of
> who might be there specifically to watch); (4) any cover charge
> levied because of the interception; (5) what additional money
> patrons spent because of the interception (i.e., the amounts spent
> by those who otherwise would not have come, plus any other
> premiums or greater spending by those who would have come
> anyway); and (6) any such other factors as may appear relevant in
> the case before the court."

   *Id.*

*Id.*

   Concerning the above-referenced factors, the plaintiff has provided evidence from Boettner that Pasta Alla Rosa had a capacity of approximately 80 people and "at the time of [his] appearance [he] counted the number of patrons three (3) separate times. The head counts were 23, 27, [and] 30." Boettner Aff. Boettner also stated that he observed the undercard fight on three televisions, one of which was a 24-inch television and another was a 40-inch television. *Id.* Boettner also paid a $30.00 charge for food. *Id.* The plaintiff has also provided evidence indicating that it would have charged the defendants a licensing fee of $2,200 to lawfully receive and exhibit the boxing match.[8] *See* Gagliardi Aff. at ¶ 8 & Ex. 2 (showing licensing fee of $2,200 for establishments with minimum seating capacities of 0 – 100 people).

   Based on this evidence, the plaintiff is at least entitled to $2,200 for the licensing fee that it did not receive because of the defendants' unlawful interception of the Program. In addition, the court finds that the cover charge (or entry fee) of $30 that the defendants were charging for individuals to be present at Pasta Alla Rosa, should be multiplied by the highest number of patrons that Boettner observed in the restaurant, which was 30. Unfortunately, the plaintiff has not supplied with court with additional evidence about how many patrons actually entered the

---

[8] The plaintiff charged a flat fee of $2200.00 for minimum seating of 0-100. *Id.*

restaurant during the entire course of the Program or even whether the other patrons were actually watching the Program. Nonetheless, the court will award the plaintiff an additional $900 (30 patrons multiplied by the $30 entry fee/cover charge) in statutory damages for any actual profit acquired by the defendants through their unlawful interception and broadcast of the Program. Accordingly, the court will award a total of $3,100 in statutory damages.[9]

Regarding enhanced damages, any award should include considerations of deterrence. As to whether the defendants willfully violated the section 605, the plaintiff has demonstrated that the defendants required patrons to pay a cover charge or entry fee. The defendants have also admitted to advertising for the wrongful broadcasting of the Program. Chauca Admiss. at ¶¶ 10-12; GL Group Admiss. at ¶¶ 10-12. The defendants also knew that commercial establishments were required to have a commercial license to broadcast pay-per-view boxing events, that they did not have a commercial license to exhibit the Program, and that they were not authorized to exhibit the Program at Pasta Alla Rosa. Chauca Admiss. at ¶¶ 45-48; GL Group Admiss. at ¶¶ 45-48. In addition, the plaintiff has introduced evidence that its programming "cannot be mistakenly, innocently or accidentally intercepted." Gagliardi Aff. at ¶ 9. Accordingly, the

---

[9] The court notes that none of the cases cited by the plaintiff in support of its requested statutory damage award were instructive or persuasive. In this regard, the cases of *J & J Sports Productions, Inc. v. McCausland*, No. CIV. A. 1:10-1564-TWP-DML, 2012 WL 113786 (S.D. Ind. Jan. 13, 2012), *Joe Hand Promotions, Inc. v. Pinkhasov*, No. CIV. A. 11-2437-PHX-FJM, 2012 WL 3641451 (D. Ariz. Aug. 24, 2012), *J & J Sports Productions, Inc. v. Brazilian Paradise, LLC*, 789 F. Supp. 2d 669 (D.S.C. 2011), and *Kingvision Pay-Per-View, LTD v. Lardo*, No. CIV. A. 10-59, 2010 WL 3463316 (W.D. Pa. Sept. 1, 2010), all indicate that the award of statutory damages was based, at least in part, on a goal of deterrence, a premise that this court rejects. *See Pinkhasov*, 2012 WL 3641451, at *1 ("After considering the goal of deterring cable piracy[,] we conclude that a statutory damages award of $10,000 is appropriate."); *McCausland*, 2012 WL 113786, at *3 (awarding maximum statutory damages of $10,000 because of, *inter alia*, "the apparent need to send a strong deterrent signal"); *Brazilian Paradise, LLC*, 789 F. Supp. 2d at 676 ("Under the facts and circumstances here, the undersigned believes that J & J's request for an award of $5,000 is reasonable and, when combined with the enhanced damages and attorneys' fees discussed below, is a sufficient deterrent."); *Lardo*, 2010 WL 3463316, at *3 ("The court finds [the sum of $3,000] sufficient to fully compensate Kingvision for the $900 it would have earned had defendants purchased a license for the event, and enough to deter defendants and others like them from engaging in such conduct again."). In addition, contrary to the plaintiff's argument, the case of *J & J Sports Productions, Inc. v. Thomas*, No. 10-7051, 2011 WL 3156765 (E.D. Pa. July 26, 2011), is not "instructive" here, *see* Pl.'s Br. at 12-13, because the opinion does not address the merits of an award of statutory damages under section 605. Instead, the opinion addresses the plaintiff's request for attorney's fees and costs and merely indicates that the court awarded $9,200 in statutory damages after a hearing on a motion for a default judgment. *Thomas*, 2011 WL 3156765, at *1.

court can infer that the defendants willfully violated section 605.  *See Cruz II*, at *6 ("As for the knowledge or reckless disregard factor, 'it is hard to believe that a defendant who acts intentionally to intercept [a transmission] unlawfully does not know the illegality of his actions (or at least recklessly disregards the distinct possibility of unlawfulness).'" (quoting *Yakubets*, 3 F. Supp. 3d at 288)).

The plaintiff's evidence also shows that the defendants acted "for purposes of direct or indirect commercial advantage or private financial gain."  47 U.S.C. § 605(e)(3)(C)(ii).  As indicated above, the plaintiff has introduced evidence in the record that there were three televisions broadcasting the Program, the defendants were asking for a cover charge and were selling food to patrons, and the defendants advertised the showing of the Program.  Thus, an award of enhanced damages is appropriate here.

For the amount of enhanced damages,

a simple multiplier best achieves the dual goals of general and specific deterrence and vindicates Congress's interest in generally deterring theft of [satellite] services … as well as addresses [the enhanced damage's subsection's] commercial advantage or private financial gain' prerequisite by forcing the defendant to disgorge a multiple of its profits (and thus also specifically deters).

*Cruz II*, at *7 (internal quotation marks and citation omitted).  "Courts applying multipliers have generally awarded anywhere from three to six times the award for enhanced damages."  *Id.* (citation omitted).  In this case, the plaintiff has requested a 4-times multiplier and justifies the increase beyond a 3-times multiplier because the defendants requested patrons to pay a cover charge to view the Program.  Pl.'s Br. at 13.

Despite the defendants' arguments in favor of a 4-times multiplier for enhanced damages, the court finds that a multiplier of three is appropriate in this case.  This multiplier adequately addresses the importance of deterrence and the facts and circumstances of this particular case,

including the fact that the defendants have seemingly abandoned their defense of this litigation. Therefore, the court will award enhanced damages in the amount of $9,300.

### III.    CONCLUSION

The plaintiff has established that there are no genuine issues of material fact whether the defendants violated section 605 by unlawfully intercepting and exhibiting the Program to patrons at Pasta Alla Rosa on December 8, 2012, and, as such, that it is entitled to judgment as a matter of law.  The court imposes statutory damages in the amount of $3,100 and enhanced damages in the amount of $9,300, for a total damage award of $12,400.  The court notes that the plaintiff has requested an award of attorney's fees and costs, and the court will allow the plaintiff fourteen days from the date of the order entering judgment to supply the requisite evidence of attorney's fees and costs under 47 U.S.C. § 605(e)(3)(B)(iii).[10]

The court will issue a separate order.

BY THE COURT:


/s/ *Edward G. Smith, J.*
EDWARD G. SMITH, J.

---

[10] As indicated above, the plaintiff asserted a cause of action for conversion and it did not seek summary judgment on its section 553 claim.  The plaintiff cannot obtain a judgment on both the section 553 and section 605 claims, so the court will dismiss the section 553 claim in light the court entering judgment on the section 605 claim. Additionally, the court will dismiss the state-law conversion claim because even if it is a cognizable theory of liability in the context of this case, the plaintiff could not double recover under that claim.  *See, e.g., J & J Sports Prods., Inc. v. Main Hookah Lounge, LLC*, No. CIV. A. 14-1075-W-DGK, 2015 WL 6457300, at *6 (W.D. Mo. Oct. 26, 2015) (agreeing with "those courts holding that recovery under [either Section 553 or 605] and a state law conversion claim would result in an impermissible double recovery for the same loss" (citations and internal quotation marks omitted)); *see also Joe Hand Prods., Inc. v. Becchetti*, No. CIV. A. 12-1242, 2013 WL 4520638, at *2 (M.D. Pa. Aug. 26, 2013) (denying plaintiff's request for damages under "conversion theory of liability" because (1) under Pennsylvania law a conversion claim may not lie for a pirated satellite broadcast because it is intangible property and the plaintiff did not argue that it was "merged or otherwise connected to a document," and (2) any damage award would not exceed an award under section 605 and would result in a double recovery).